# CASE NO.  23-12110 and 23-14118

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

## UNITED STATES OF AMERICA,

*Plaintiff/appellee,*

v.

## ANTONIO JAMES JR.,

*Defendant/appellant.*

## On Appeal from the United States District Court
## For the Southern District of Florida
## (Dist. Ct. no. 21-cr-60011-AHS)

## REPLY BRIEF OF THE APPELLANT ANTONIO JAMES JR.


**KEN SWARTZ**
**Counsel for Appellant**

**SWARTZ LAW FIRM**
**14 N. E. First Ave., Suite 1211**
**Miami, Florida 33132**
**Tel: 305-579-9090**
**Fax: 305-579-9090**
**Florida Bar No. 331929**
**ken@swartzlawyer.com**

## THIS CASE IS ENTITLED TO PREFERENCE
## (CRIMINAL APPEAL)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT
## NO. 23-12110 and 23-14118

Adelstein, Stuart - Former Counsel for Alexander-Wilcox

Alexander, Ajay - Assistant United States Attorney

Alexander-Wilcox, Dionte - Co-Defendant/Co-Appellant

Berube, Robert N. - Assistant Federal Public Defender

Campbell, Kejuan Brandon - Defendant/Appellant

Cohen, Alix, Assistant United States Attorney

Cohn, Hon. James I. Senior United States District Judge

Fajardo, Ariana Orshan -Forner United States Attorney

Gonzalez, Jose A.

Grove, Daren - Assistant United States Attorney

Harris, H. -Victim

Harris, H. -Victim

Horowitz, Philip Robert - Attorney for Mr. Alexander-Wilcox

Hunt, Hon. Patrick M. - United States Magistrate Judge

James, Jr, Antonio - Co-Defendant/Co-Appellant

Kreiss, Jason W. - Former counsel for Mr. James

ii

Lapointe, Markenzy - United States Attorney

Latta, Brooke - Assistant United States Attorney

Lowenthal, Sheryl J. - Appellate Counsel for Mr. Campbell

Matzkin, Daniel - Assistant United States Attorney

Mulvihill, Thomas  -Assistant United States Attorney

Rosenberg, Gary I. - Trial Counsel for Mr. Campbell

Singhal, Hon. Raag - United States District Judge

Snow, Hon. Lurana S. - United States Magistrate Judge

Strauss, Hon. Jared M. - United States Magistrate Judge

Suntrust (STI) acquired by Truist (TFL) - Victim

Swartz, Kenneth M. - Counsel for Codefendant James

Valle, Hon. Alicia O. - United States Magistrate Judge

Wu, Jason, Assistant United States Attorney

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

TABLE OF CITATIONS........................................................................................ iv

ARGUMENT AND CITATIONS OF AUTHORITY ............................................. 1

**I.  The Trial Court erred in denying Defendant James' Motion to Suppress the evidence seized from Apple iCloud Account…………………..  1**

**a.  The search warrant affidavit failed to show a nexus between the crime alleged in the probable cause affidavit and the information the search warrant intended to produce from the iCloud account………………………………  2**

**b.  The Good Faith exception does not apply in this case. ………….  7**

**c.  The error was not harmless…………………………………………..  9**

**II.  The bank robbery involving the ATM withdrawals consisted of virtually the same conduct and supports only one conviction under 18 U.S.C. §924(c)……………………………………………………………. 14**

CONCLUSION .............................................................................................16

CERTIFICATE OF COMPLIANCE ........................................................17

CERTIFICATE OF SERVICE ..................................................................17

**TABLE OF CITATIONS**

**STATUTORY AND OTHER AUTHORITY:**

Fourth Amendment to the U.S. Constitution………………………….. 4, 6, 7, 9

18 U.S.C. §924(c)…………………………………………………… 14, 15, 16

**Cases**

*Arizona v. Fulminante*, 499 U.S. 279 (1991)……………………………………… 9

*Chambers v. Maroney*, 399 U.S. 42 (1970)…………………………………… 10

*Chapman v. State of California*, 386 U.S. 18  (1967) …………………………..10

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971)…………………………..… 6

*\*Illinois v. Gates*, 462 U.S. 213 (1983)……………………………………………3, 6

*United States v. Leon*, 468 U.S. 897 (1984)…………………………………… . 7, 9

*\*United States v. Decker*, 956 F.2d 773 (8th Cir. 1992)………………………   9

*\*United States v. Finley*, 245 F. 3d 199 (2nd Cir. 2001)……………………… 15

*\*United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002)………………………4, 8

*United States v. Rahim*, 431 F.3d 753 (11th Cir. 2005)………………………... 15

*United States v. Roy*, 855 F.3d 1133 (11th Cir. 2017)…………………………….9

**ARGUMENT AND CITATIONS OF AUTHORITY**

**I.**    **The Trial Court erred in denying Defendant James' Motion to Suppress the evidence seized from the Apple iCloud Account.**

1

**a. The search warrant affidavit failed to show a nexus between the crime alleged in the probable cause affidavit and the information the search warrant intended to produce from the iCloud account.**

The Government's brief recounts the probable cause portion of the Search Warrant describing codefendant Campbell's extensive use of his phone during the commission of the attempt to steal money from the victims, but it gave minimal information about Defendant James's use of his phone. (Govt bf. at 24, referring to paragraphs 9 and 17 of the warrant).  The affidavit states that Campbell was repeatedly using his cell phone while at different banking institutions, Miami Casino, Publix, and Amscott.  The victim's cellphone was used to take photographs of the victim's vehicles and vehicle titles. *Id*. Without actually identifying what Defendant James did with his phone, the warrant application simply stated, "the three black males used their own cellphones while inside the residence." *Id.* Additionally, "one of the three masked subjects" installed Cash App on Hope Harris's phone, without her permission, though neither victim witnessed the installation. D.E. 100:¶ 7.  There were five attempts to transfer money from the Harris's account using Cash App on October 11, 2020, from 4:42 p.m. through 4:53 p.m.  It failed and no funds were transferred. *Id.* at ¶ 26 The only information linking James's phone to the attempted Cash App transactions was

2

that his name and telephone number was the reference name and number associated with the transactions.  Id. at ¶ 49.

The 14-paragraph section of the search warrant affidavit, entitled "Information Regarding Apple ID and iCloud," explained the extensive amount of personal information about an individual stored in the iCloud. (D.E.100:¶¶33-46).  The Government described this as "technical information explaining how iCloud operates." (Govt. bf. at 25)   This section is fundamental to the legal validity of the search warrant because the warrant application must show a "fair probability" that evidence of the crime set forth in the probable cause section will be found in the iCloud. *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Here the search warrant affidavit failed to show a fair probability the area intended to be searched, specifically the iCloud, contains evidence of the crime.

The Government tries to bolster the search warrant application with Agent Goodrich's statement that in his training and experience "instant messages, emails, voicemails, photos, videos and documents are often created and used in furtherance of criminal activity."  Govt. bf. at 25. This is merely a general statement about criminal activity from the boiler-plate search warrant.   There is no specific reference to Defendant James' specific use of his phone and how it was linked to the iCloud.

3

This 14-paragraph portion of the search warrant does not contain a single fact from the probable cause portion of the application that links the offense described in the probable cause portion to the vast amount of personal information stored in the iCloud.  The affidavit offers no nexus between the crime and the place to be searched as required by the Fourth Amendment.  "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002).  The only facts connecting the offense to the iCloud are from a completely different offense involving sexual offenses by an individual named Hamilton.

The Government dismisses this Constitutional flaw as a mere "scrivenor's error" and concedes the search warrant was a major cut and paste from "a template that another agent or attorney prepared in conjunction with Apple." Govt. bf. at 26 (Citing DE 301:36-38). There was no attempt at all to particularize the place or things to be seized and to prevent a general exploratory rummaging search of an iCloud account. This portion of the search warrant did not identify any specific use of James's phone during the commission of the offense that would lead to evidence in his iCloud account.

4

Agent Goodrich drafted the flawed search warrant but could not recall how he wound up placing the section entitled "Information Regarding Apple ID and iCloud" in the warrant.

> Q. So where -- I'm just trying to -- when you were drafting this search warrant, did you take that search warrant from another search warrant in this case? Was it the Hamilton search warrant?
>
> A. So I didn't work on the Hamilton case. I've received ponies from -- a lot of times I receive what we call ponies or templates search warrants, I'll receive them from the prosecutor. I've worked with Ajay in the past. I may have not have used an iCloud pony or iCloud template. I'll reach out to the attorney and ask him, because some attorneys like certain versions and others like different versions. So I believe Ajay, the prosecutor in this case may, have provided this pony to me. I don't recall doing an iCloud search warrant for a defendant named Hamilton, if that's what you're asking.
>
> Q. So this part of the search warrant was sent to you or given to you by Ajay or by somebody else?
>
> A. I can't recall who provided it to me. I'm assuming in this case. I know I didn't -- I don't have a -- I've never federally arrested anyone by the last name of Hamilton that I can recall.

(301:37-38)

The Government tries to explain away the inclusion of facts from a completely different case as an "inadvertent[] reference[] [to] a defendant from an unrelated case." Govt. bf. at 25. But Agent Goodrich's testimony shows he lifted the entire portion from another case without reading it. There was nothing inadvertent about it.

5

The agent's reason for lifting the entire section from another search warrant and placing it in this search warrant was that Apple is "the most difficult tech company to work with." (D.E. 301:39)  does not overcome the failure of the affidavit to provide a nexus between the crime committed and the place to be searched. Regardless of Apple's requirements, the search warrant application must meet the Constitutional requirement that there is a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213, 238 (1983).   The Fourth Amendment's protection is intended to prevent law enforcement from conducting a general exploratory search. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). [1]

The requirements of the Fourth Amendment are the focus of the search warrant affidavit; not the requirements of Apple Inc.  The "Information Regarding Apple ID and iCloud" portion is not placed in the search warrant affidavit to satisfy Apple.   It is provided for the Magistrate Judge reviewing the search warrant application.   The description of what information Apple must disclose under the Search Warrant itself is found in Attachment A ("Property to be searched") and Attachment B ("Particular things to be Seized."). D.E. 100.

---

[1] It is worth noting in this search warrant application that in the Hamilton case there was an attempt to provide facts from that crime that would link to Hamilton's

The agent's statement about Apple being a difficult company does not excuse his using a template that is factually connected to a completely different case and has no factual connection to the Defendant. Whatever difficulty Agent Goodrich had in dealing with Apple has nothing to do with the Fourth Amendment requirement that the iCloud be linked to some evidence of the offense.

### b.  The Good Faith exception does not apply in this case.

This Court should reject the Government's argument that the Fourth Amendment violation should not result in the suppression of evidence seized because the agent relied in good faith pursuant to *United States v. Leon,* 468 U.S. 897 (1984).  FBI Agent Goodrich admitted that he haphazardly cut an extensive portion from another search warrant application and pasted it into this search warrant without thoroughly reading what it contained.  He made no attempt to review the application and explain the probable cause link to Defendant James's iCloud account.  Due to the agent's careless disregard for the Fourth Amendment, the search warrant application only explained how a search of the Defendant James' iCloud would reveal evidence of Hamilton's offense. D.E. ¶¶45-46. Nothing in the warrant explained how the search of James' iCloud account may reveal evidence of the offense for which James was being investigated.

---

iCloud account.

The agent placed the "Information Regarding Apple ID and iCloud" template into the Defendant's search warrant without bothering to read it.

> Q. So everything from [paragraph] 34 on was taken from a different source or was taken from a different search warrant or given to you by someone that came from a different search warrant?

> A. Yes, sir.

> Q. And so you don't read through it, you simply either attach it or somebody gives it to you and you attach it to your probable cause portion of the search warrant?

> A. I read them. I read them to ensure that it's the appropriate one. But I'm not going over it with a fine-tooth comb, unless it's the probable cause section. Now, that section I read thoroughly.

D.E. 301:40

Not only did Agent Goodrich fail to go over the application "with a fine-tooth comb," he evidently failed to read this section of the search warrant application.

Most importantly, it is apparent that the Magistrate Judge failed to read this portion. Otherwise, this clear error would have been caught. This Court has clearly required that a Magistrate Judge must read the warrant and "make his own independent assessment as to whether the warrant and its underlying affidavit contain sufficient amount of information to support a finding of probable cause." *United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002). A Magistrate Judge

cannot "act as a mere 'rubber stamp' if he solely relies upon the fact that police officers are asking for the warrant." *Id*.  *Martin* cited *United States v. Decker*, 956 F.2d 773, 777 (8th Cir. 1992) to reaffirm the point that a "magistrate judge abandoned his duty to act in a neutral and detached manner when he signed a search warrant without reading it." *Id*. at 1316.

The agent placed the language in the application out of convenience and without regard to the constitutional safeguards.  The indication here is that the Magistrate Judge did not read the affidavit or at least did not read the affidavit entirely and just relied on the agent or the Assistant United States Attorney or both. The evidence that the search warrant was rubber stamped overcomes the Government's good faith argument under *Leon*.  James's motion to suppress should have been granted and the evidence seized from the James's iCloud account should have been suppressed.

### c.  The error was not harmless.

The Supreme Court has applied the harmless-error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless. *United States v. Roy*, 855 F.3d 1133, 1143 (11th Cir. 2017) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). The admission of evidence obtained in violation of the Fourth Amendment is one of the constitutional errors that fall under the harmless error rule.

*Chambers v. Maroney*, 399 U.S. 42, 53(1970).  However, the Court must find that the error is harmless beyond a reasonable doubt. *Chapman v. State of California*, 386 U.S. 18, 24 (1967).

The evidence against Defendant James was hardly harmless beyond a reasonable doubt.  The evidence which was obtained from the illegally seized iCloud account consisted of the evidence that directly identified James as one of the three individuals that entered the victims' home.

One piece of crucial evidence was a video was of a man wearing a blue latex pointing a gun at the Harrises while they lay on the floor. The man is seen wearing white pants with black stripes.  (D.E. 340:54-56, GEX 58A, 42D-2) While his face cannot be seen in the video, another video seized from the iCloud account that was created a month earlier shows James's face and shows he is wearing the same white pants with black stripes. (D.E. 340:56-57, GEX 42D-3) The videos are important in linking James's presence to the house as one of the three individuals that used a firearm to hold the victims against their will.  In addition, when James was arrested, the officers recovered a Bersa 380 firearm under the driver's seat, just in front of the back seat where he was sitting. (D.E. 338:234-236).  The gun found in the car with James matched the gun seen in the video.

Another video produced by Apple pursuant to the search warrant was the

October 13, 2020, video showing James in a car with a firearm on his lap and a lot of cash.  James could be seen in that video with a gun that appeared to be the same "unique shape" firearm that he had when he was arrested and that was seen pointed at the Harris's while they lay on the floor. (D.E. 350:27).  The prosecutor pointed out these similarities. (D.E. 350:27-28).

A fourth video created on October 12, 2020, the second day of the offense, showed Campbell in the front seat counting cash and Alexander-Wilcox in the back seat of the car. (D.E. 340:59-60, GEX 41C-2)

Other images from James's iCloud account which the government offered to link James to the crime included photos of both Hope and Harvey Harris on the floor of their living room (GEX 42E-3, 42E-4); a photo of James in a car with a stash of cash (GEX 42E-5); and a photo of a sheet of paper with Carl Needham's mother's address. (GEX 58C)

When the prosecutor touched on the evidence linking Defendant James to the offense, he devoted a large portion of his closing argument to the evidence found in Defendant James's iCloud (D.E. 26-29) The prosecutor emphasized to the jury that these videos and photographs which came from James's iCloud overwhelmingly identified James as one of the individuals that committed this offense.   He specifically noted these images and videos came from his iCloud.

11

Again, ladies and gentlemen, as I mentioned, these photographs were all derived from James's iCloud, all of which he had access to through his phone. This is what we're looking at here. The video, ladies and gentlemen, of the home invasion, the kidnapping was taken at 3:52 p.m. The creation date is 3:52 p.m. on October 11th. That's the record. That's consistent with the timeline that we presented.

(D.E. 350:29)

Neither of the witnesses had identified Defendant James as a participant. Campbell's identity was established in many ways including his cell phone activity, multiple surveillance recordings with Hope Harris, his identification given at Amscot, and his name written on the check by Hope Harris. Alexander-Wilcox's identity was established by his own admission that he gave in his post arrest statement. (D.E. 339:81, GEX 22B)

The strength of the Government's identification evidence as it pertained to James came from the iCloud account. Aside from the evidence that came from the Defendant's iCloud the only remaining evidence linking him to the offense was largely circumstantial evidence of his actual presence as one of the individuals that entered the Harris house to commit the crime.

The Defendant's defense had to explain the reason James possessed a firearm in the video clip GEX 42D-2. Given the iCloud evidence presented at trial, the defense had to concede he was one of the individuals in the house. Without the incriminating

12

iCloud evidence, the case against the Defendant was not nearly as strong and issue of the Defendant's identity as one of the individuals present in the Harris house could have been raised as an issue in his defense.

Though records showed the attempted Cash App transactions indicated a phone number notification to Defendant James, this did not necessarily mean he needed to be present for the attempted Cash App transaction. Similarly, Campbells cell phone showed text messages to Defendant James indicating, he was robbed by Needham; a test to Campbell asking "you good?"; and a smiley face text to James from Campbell after he withdrew money from the third ATM. By themselves, these brief communications may show that James had some contact with Campbell by phone, but it does not prove James was physically with Campbell or that he knew everything Campbell was doing.

As for the fingerprint found on a Tommy Hilfiger package inside the suitcase found the next day 200 yards from James's residence, (D.E. 338:214-215) there is no evidence regarding when Defendant James handled it, assuming he did touch it. The only other incriminating evidence was that his DNA was on the rim of a drinking glass and a Ziploc bag that came from the Harris's house. (D.E. 339:68, 74-75). Again, the presence of DNA does not indicate when or how the DNA was left there or when and how the items containing the DNA got there. As for the cigarette butt, the DNA

13

analyst only found "moderate support" that James's DNA was on present. (D.E. 339: 72-73). A credible reasonable doubt argument regarding Defendant James's identity to the crime could have been raised if this was the only evidence linking James to the scene. Nevertheless, without the iCloud evidence, the evidence against Defendant James is far from overwhelming. The strongest evidence against Defendant James came from the evidence seized from the iCloud account and the error in denying the motion to suppress was not harmless.

## II. The bank robbery involving the ATM withdrawals consisted of virtually the same conduct and supports only one conviction under 18 U.S.C. 924(c).

The Government concedes that the single criminal objective by the Defendants was to steal $20,000 from the victim to recoup the $20,000 Carl Needham took from Codefendant Campbell. Ultimately Campbell accomplished this by using Hope Harris's debit card to withdraw the funds from the SunTrust ATM machine. He told Hope Harris to contact the SunTrust Bank customer service, and they increased the daily maximum amount she could withdraw from an ATM machine. (336:138) Defendant drove Hope Harris to the SunTrust Bank ATM machine in Miramar where he withdrew up to the limit for that machine, (336:142) Then he drove with Hope Harris to the Pembroke Pines SunTrust ATM

14

where he withdrew the limit from that machine. From there he drove with Hope Harris to the Davie SunTrust ATM location where he withdrew the remaining amount. (336:142-147). Hence, Campbell had to travel with Harris to three ATM machines to reach his objective of recouping $20,000.

These facts clearly support the finding that the ATM withdrawals were simultaneous offenses consisting of virtually the same conduct. The firearm possession itself was a continuous possession in furtherance of simultaneous offenses that were virtually the same conduct, which was the withdrawal of $20,000 from Hope Harris's bank account. This case falls within the "plainly distinguishable facts" of "virtually the same conduct" that this Court recognized was the reason other circuits have reversed multiple convictions under 18 U.S.C. 924(c). *United States v. Rahim*, 431 F.3d 753, 758 (11th Cir. 2005). "The statute does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." *United States v. Finley*, 245 F.3d 199, 207 (2nd Cir. 2001).

Codefendant Campbell could not raise the full amount from the first machine, so he went to the second and then the third until he acquired the amount he wanted. This was the only reason he went to multiple ATM locations. The bank

robbery took place at three different ATM machines, but it involved the same bank and the same victim and the same firearm. The ATM machines were located in separate cities but the withdrawals were part of the same course of conduct.

The Government states that Defendants James and Alexander Wilcox held Harvey Harris at gunpoint at the Harrises' house while Defendant Campbell withdrew funds from the ATM machines with Hope Harris. (Govt. bf at 59) This fact has no relevancy as to whether the act of withdrawing funds from multiple ATM machines is the same predicate offense to support multiple convictions of 924(c). The Defendant's possession of a firearm at the Harris's house was not the predicate offense for the 924(c) conviction.

## CONCLUSION

Defendant Antonio James Jr. respectfully requests that this Court reverse his conviction and remand this case to the district court for a new trial with directions to grant the Defendant's motion to suppress the Apple iCloud evidence.

Alternatively, Defendant James respectfully requests that this Court remand this case for resentencing with directions that the Defendant be sentenced to only one of the 18 U.S.C. §924(c) convictions.

The Defendant further incorporates the relief requested in his initial brief as to

all other issues raised in his initial brief and as to all issues adopted in his Motion to Adopt (D.E. 87).

 s/ Ken Swartz
**KEN SWARTZ**
Counsel for Appellant Antonio James, Jr.
SWARTZ LAW FIRM
14 N. E. First Ave., Suite 1211
Miami, Florida 33132
Tel: 305-579-9090
Fax: 305-579-9090
Florida Bar No. 331929
ken@swartzlawyer.com

## CERTIFICATE OF COMPLIANCE

I CERTIFY that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a) (7). According to the Word program on which it is written, the numbered pages of this brief contain 3,471 words.

 s/ Ken Swartz

Ken Swartz

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 14, 2025, Appellant Antonio James Jr.'s Reply Brief was delivered to the Court and the United States Attorney via ECF, the Court's electronic filing system.

 S/ Ken Swartz
Ken Swartz

17